**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 18-2060**

———————

TAMMY S. KENEDY,

        Plaintiff - Appellant,

    v.

ANDREW SAUL, Commissioner of Social Security,

        Defendant - Appellee,

    and

SOCIAL SECURITY ADMINISTRATION,

        Party - in - Interest.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, Chief District Judge.  (1:17-cv-00081-TDS-LPA)

———————

Submitted:  April 26, 2019                       Decided:  July 22, 2019

———————

Before DIAZ and QUATTLEBAUM, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————

Vacated and remanded by unpublished per curiam opinion.

———————

J. Kevin Morton, Winston-Salem, North Carolina, for Appellant.  Matthew G.T. Martin, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina; Eric P. Kressman, Regional Chief Counsel, Charles Kawas, Supervisory

Attorney, David E. Somers, III, Special Assistant United States Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Tammy S. Kenedy appeals the district court's order adopting the magistrate judge's recommendation and upholding the Administrative Law Judge's (ALJ) denial of Kenedy's applications for disability insurance benefits (DIB) and supplemental security (SSI) income. On appeal, Kenedy argues that the ALJ's assessment of her residual functional capacity (RFC) is not supported by substantial evidence because he did not follow the regulatory requirements when assessing her credibility. Specifically, Kenedy contends that the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion that her statements regarding the intensity and persistence of her asthma symptoms were only partially credible. We agree. Accordingly, we vacate the district court's judgment and direct the court to remand the case to the agency for further proceedings consistent with this opinion.

"In social security proceedings, a court of appeals applies the same standard of review as does the district court. That is, a reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (citation and internal quotation marks omitted). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citation and internal quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that

3

of the ALJ.  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (brackets, citation, and internal quotation marks omitted).  We do not, however, "reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

"An ALJ reviews an application for SSI [and DIB] using a five-step process established by the regulations of the Social Security Administration." *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2019). "Steps 1 through 3 ask: (1) whether the claimant is working; (2) if not, whether she has a severe impairment; and (3) if she does, whether the impairment meets or equals a listed impairment." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (internal quotation marks omitted).  "Satisfying step 3 warrants an automatic finding of disability, and relieves the decision maker from proceeding to steps 4 and 5." *Id.*  "If the claimant fails at step [3], the ALJ must then determine the claimant's [RFC], which has been defined as the most [the claimant] can still do despite [her] physical and mental limitations." *Brown*, 873 F.3d at 254 (brackets and internal quotation marks omitted). "After determining the claimant's RFC, the ALJ proceeds to step [4]" and decides whether the claimant is "able to perform [her] past work." *Id.* at 255 (internal quotation marks omitted).  If the claimant is not able to perform her past work, "the ALJ finishes at step [5], where the burden shifts to the Commissioner." *Id.*  To withhold benefits, "the Commissioner must prove . . . that the claimant can perform other work that exists in

4

significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience." *Id.* (brackets and internal quotation marks omitted).

In assessing a claimant's RFC, "[t]he ALJ must consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect the claimant's ability to work," offering "a narrative discussion describing how the evidence supports each conclusion." *Thomas*, 916 F.3d at 311 (brackets and internal quotation marks omitted). After "the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Id.* Thus, we have explained that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Id.* "The ALJ's logical explanation[] is just as important as the other two" requirements because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Id.*

"[A]n ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." *Lewis*, 858 F.3d at 865-66; *see* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c) (2019). The ALJ first "looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms" and then "evaluate[s] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Lewis*, 858 F.3d at 866. The second step "requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." *Id.*

The regulations instruct ALJs not to reject a claimant's reports about the intensity and persistence of her symptoms or about how her symptoms affect her ability to work

5

solely because the medical evidence does not substantiate the reports. *Id.* Instead, when examining the credibility of an individual's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual, and any other relevant evidence." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *1 (July 2, 1996).[*] An ALJ's assessment of a claimant's credibility regarding the intensity and persistence of her symptoms is entitled to great weight when it is supported by the record. *See Hancock*, 667 F.3d at 472. "Significantly, however, the ALJ must build an accurate and logical bridge from the evidence to his conclusion that the claimant's testimony was not credible." *Brown*, 873 F.3d at 269 (brackets and internal quotation marks omitted).

We are troubled by several aspects of the ALJ's credibility analysis in this case. The ALJ determined that Kenedy's claim that she was hospitalized for 14 days in July 2015 for asthma was not accurate, finding instead that she was hospitalized for only 5 days that month for asthma. The record, however, supports Kenedy's claim. She was admitted on July 17 for shortness of breath, among other issues, and was discharged on July 21 after receiving breathing treatments. She was readmitted the next day after complaining of,

---

[*] Although the Commissioner rescinded SSR 96-7p in March 2016, that policy statement was in effect at the time of the ALJ's decision in November 2015. In any event, the new SSR simply eliminates the term "credibility" to clarify that "subjective symptom evaluation is not an examination of an individual's character" but should be made in accordance with the two-step process outlined in the regulations. SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

6

among other symptoms, shortness of breath and chest-tightening, which are the symptoms she typically experiences when she has an asthma exacerbation. The physical examination supported Kenedy's complaints, and she was discharged on July 31 with diagnoses of an acute asthma exacerbation, severe persistent asthma, and an acute pulmonary embolism. Thus, while Kenedy received treatment for other ailments during her hospitalization in July 2015, as she acknowledged in the hearing before the ALJ, a major part of her 14-day hospital stay included treatment for her asthma exacerbation. Moreover, although the ALJ reasonably concluded that Kenedy slightly exaggerated the number of times she visited the emergency room for asthma exacerbations in 2015, the ALJ failed to explain how this discrepancy in Kenedy's testimony was relevant to the intensity or persistence of her asthma exacerbations.

Next, the ALJ relied on Kenedy's lack of treatment for her lupus. Yet, SSR 96-7p instructs that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p, 1996 WL 374186, at *7; *see Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."). The ALJ did not account for Kenedy's statement to the consultative examiner that she could not afford to see a rheumatologist due to lack of insurance or her testimony that she was finally able to afford the lupus medication after qualifying for Medicaid. Last, although the ALJ correctly

7

observed that Kenedy did not often complain about her lupus symptoms to her physicians, most of the physicians were specialists in other fields, and Kenedy was clear that her asthma exacerbations prevented her from working.

Based on the foregoing, we conclude the ALJ's decision to only partially credit Kenedy's statements regarding the intensity and persistence of her asthma symptoms is not supported by substantial evidence. Accordingly, we vacate the district court's judgment and remand with instructions to remand the case to the agency for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*VACATED AND REMANDED*